## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| JOHN A. BUELOW | * | CIVIL ACTION NO.  09-0806 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| GARDNER DENVER, INC. AND GARDNER DENVER THOMAS, INC. | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

motion for summary judgment [doc. # 8] filed by defendants, Gardner Denver, Inc. and Gardner

Denver Thomas, Inc., seeking a judgment holding that the plan under which plaintiff seeks relief

is an Employee Welfare Benefit Plan under the Employee Retirement Income Security Act of

1974, ("ERISA"), 29 U.S.C. § 1001, *et seq*., and as such, plaintiff's claims are completely

preempted  For reasons assigned below, it is recommended that defendants' motion for summary

judgment on the issue of ERISA preemption be **GRANTED**.

### Background

From 1989 until February 10, 2009,[1] John A. Buelow was employed as a Manager of

Manufacturing Engineering with Gardner Denver, Inc. and Gardner Denver Thomas, Inc.

(collectively referred to as "Gardner").  (Petition, ¶¶ 3-4).  At the time of Buelow's discharge,

Gardner had in effect a "Separation Allowance Plan for Salaried Employees" (the "Gardner Plan"

or "Plan") which provides "short-term financial assistance to salaried employees who are

---

[1]  Buelow worked for Gardner for approximately 20 years.  (Petition, ¶ 3).

permanently and involuntarily terminated through no fault of their own." (Plan, § I, Defs. MSJ, Exh. A). Under the Gardner Plan, a participating and eligible employee, over the age of 39, with 20 or more years of continuous service, is entitled to a Separation Allowance period of 26 weeks during which time he will continue to receive his normal salary, minus "any payment under a state unemployment compensation law, workers' compensation statute or any other severance, separation or salary continuation arrangement" that the employee otherwise is eligible to receive. (Plan, §§ III-IV). Buelow, however, did not receive the Separation Allowance under the Plan. (Petition, ¶ 5).

Accordingly, on April 9, 2009, Buelow filed the instant "Petition for Damages, Unpaid Wages, Penalties and Attorney's Fees" against Gardner in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana. (Petition). Buelow contends that under the terms of the Plan, Gardner owes him $36,620.25 ($1,464.81 weekly salary x 25 weeks),[2] plus penalties, attorney's fees, and legal interest pursuant to Louisiana' unpaid wages statute, Louisiana Revised Statute 23:631, *et seq*., and/or for breach of contract. (Petition, ¶¶ 4-10). On May 18, 2009, Gardner removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (Notice of Removal). Specifically, defendants contend that the Gardner Plan is an Employee Welfare Benefit Plan under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001, *et seq*., and as such, plaintiff's claims are completely preempted

---

[2] Under the version of the Gardner Plan attached to plaintiff's petition, an eligible employee under the Plan with 20 years of service is entitled to a Severance Allowance of 25 weeks. (Petition, Exh. A). Under the version of the Plan in effect at the time of plaintiff's discharge, an eligible employee with plaintiff's vocational characteristics was entitled to a Severance Allowance of 26 weeks. (*See* Plan, & Decl. of Diana Toman; Def. MSJ, Exh. 1 & 1A).

by the comprehensive regulatory scheme.  *See* Notice of Removal, ¶¶ 4-5).

Pursuant to the court's standard Civil Case Management Order issued herein on May 18, 2009, the parties were directed to

> **I.  Within 60 days** of the date of this Order, . . . file a (1) joint stipulation, (2) statement, or (3) motion for summary judgment or other dispositive motion as to the following issues:
>> a. whether ERISA governs the employee benefit plan at issue,
>>
>> b. whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and
>>
>> c. whether ERISA preempts all state law claims related to the employee benefit plan at issue . . .

May 18, 2009, Civil Case Management Order [doc. # 4] (emphasis in original).

On July 17, 2009, Gardner filed the instant motion for summary judgment seeking a determination that each of the foregoing issues should be answered affirmatively.  On August 1, 2009, plaintiff filed an opposition to defendants' motion on the grounds that there were genuine issues of material fact "with regard to whether ERISA governs and/or applies to the Plan at issue and whether ERISA preempts Plaintiff's state law claims with regard to the Plan."  (Pl. Opp. Memo., pgs. 1-2 [doc. # 12]).  On August 12, 2009, defendants filed a supplemental memorandum in support of their motion for summary judgment. [doc. # 16].  The matter is now before the court.

## **Summary Judgment**

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(b).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id*.  Indeed, in response to a properly supported motion for summary judgment, **the non-movant may not rest upon the mere allegations or denials contained in his pleadings**, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the nonmovant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the nonmovant.  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

     In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at

4

255.  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.  Nonetheless, when a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Law and Analysis

Although defendants raised the pending ERISA questions via a motion for summary judgment, at least one of the issues (whether the subject plan is an ERISA plan) implicates the court's subject matter jurisdiction.  Thus, before reaching the non-jurisdictional aspects of defendants' motion for summary judgment, the court first must resolve the jurisdictional components of the motion under a standard that is arguably more deferential to plaintiffs and which favors remand.  *See In Re: Hot-Head, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (citation omitted) (the party invoking federal jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction).  If removing defendants fail to establish federal subject

---

[3]  I.e., beyond doubt.

matter jurisdiction, then remand is required.  *See* 28 U.S.C. 1447(c); *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 623 (5th Cir. 2002) ("Where federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction.") (citation omitted).

**I.      Subject Matter Jurisdiction**

It is  axiomatic that federal courts exercise limited jurisdiction.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) (citations omitted).  A suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal jurisdiction establishes otherwise.  *Id*.  Here, Gardner invoked federal subject matter jurisdiction solely on the basis of a federal question.  (*See* Notice of Removal).  The federal question statute confers district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "The presence or absence of federal- question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of Louisiana*,  522 U.S. 470, 118 S.Ct. 921 (1998).  "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."  *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

An "independent corollary" to the well-pleaded complaint rule is the "artful pleading" doctrine.  *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (*citing Rivet, supra*).  This principle provides that a " plaintiff may not defeat removal by omitting to plead necessary

6

federal questions." *Rivet, supra* (citation omitted).  The artful pleading doctrine permits removal in cases where federal law completely preempts the plaintiff's state law claim.  *Id*.  As the Fifth Circuit observed,

> [c]omplete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into one stating a federal claim for purposes of the well-pleaded complaint rule.  In other words, even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is necessarily federal in character if it implicates ERISA's civil enforcement scheme.

*Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (internal citations and quotation marks omitted).

### a)    Is There an ERISA Plan?

The initial inquiry of course, is whether the subject plan is an ERISA plan.  If not, then ERISA does not apply, and jurisdiction is lacking.  *Hansen v. Continental Ins. Co.*,  940 F.2d 971, 976 (5th Cir. 1991).  Plaintiff contends that whether the subject plan is an employee welfare benefit under ERISA presents an issue of fact that cannot be resolved via summary judgment. *See* Pl. Opp. to Leave to File, pg. 6 [doc. # 14].  However, the Fifth Circuit treats the existence of an ERISA plan as a mixed question of fact and law. " *House v. American United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 1309 (2008) (citation omitted).  When, as here, there are no disputed issues of material fact, the issue is purely a question of law.  *Id*.

ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . ." certain benefits, including severance

benefits.  29 U.S.C. § 1002(1); *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211 (1987) (ERISA includes severance benefits paid out of an employer's general assets or trust fund).[4]

       To determine whether an employee benefit arrangement constitutes an "employee welfare benefit plan" the court must "ask whether a plan:  (1) exists; (2) [does not fall] within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'--establishment or maintenance by an employer intending to benefit employees."  *House v. American United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (citation omitted); *Wilson v. Kimberly-Clark Corp.*, 254 Fed. Appx. 280 (5th Cir. 2007) (unpubl.) (applying the foregoing considerations to severance benefits ).  If the court answers any part of the inquiry in the negative, then the "plan" is not an ERISA plan, and the court need not reach the remaining inquiries.  *Peace v. American General Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006) (citation omitted).

       1)  <u>Does a Plan Exist</u>?

       To answer this question in the severance benefit context, the court must discern whether Gardner engaged in an "ongoing administrative scheme."  *Peace, supra* (citing *Fontenot v. NL Industries*, 953 F.2d 960 (5th Cir.1992)).  If there is no "ongoing administrative program" then the plan is not an ERISA plan.  *Id.* (citing *Fort Halifax, supra*).  The Supreme Court emphasized that,

> [t]he requirement of a one-time, lump-sum payment triggered by a single event
> requires no administrative scheme whatsoever to meet the employer's obligation.

---

[4]  "An agreement to pay severance benefits may constitute an employee welfare benefit plan."  *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 621 (5th Cir. 2002).

The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well never have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Fort Halifax*, 482 U.S. at 12, 107 S.Ct. at 2218.

Nonetheless, some activities which may evidence an administrative scheme include "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements."  *Wilson, supra* (quoting *Fort Halifax, supra*).

In the case *sub judice*, the Gardner Plan provides that a Participating Employee will become an Eligible Employee and entitled to benefits if the employee is "terminated without fault."  (Plan, § III).  To be considered "terminated without fault," a Participating Employee must permanently cease active employment as the result of 1) a plant closing or staff reduction; or 2) a plant relocation.  *Id*.  A Participating Employee will not be considered "terminated without fault" if he is terminated for any one of several circumstances, including "unacceptable performance," "the employee's refusal to transfer to a reasonably comparable job," or "a situation where the employee is offered continued employment with a new owner of a former Gardner Denver, Inc. operation in a position that reasonably compares to the employee's prior position."  *Id*.[5]

---

[5]  The preceding and succeeding paragraphs are taken largely from facts set forth in defendants' Statement of Undisputed Material Facts attached to their pending motion for summary judgment.  Although plaintiff "disputes" defendants' material facts, plaintiff merely defers to the Plan itself as the best evidence of its terms and conditions.  (Pl. Statement of

Benefits are determined based on years of continuous service and age.  (Plan, § IVA).

The benefit payments are made "in the form of salary maintenance," meaning "the Company will

continue to pay the employee's normal salary, in accordance with normal payroll practices (e.g.,

semi-monthly), for the period of time described in the Benefit Determination section."  (Plan, §

IVB).  However, if an employee is eligible to receive any payment under a state unemployment

or workers' compensation law or any other severance, separation, or salary arrangement, benefits

under the Plan will be reduced by those payments on a weekly basis.  (Plan, § IVD).  If

governmental benefits and other severance payments are discontinued before the Separation

Allowance period expires, the normal salary maintenance benefit, if any, will be paid to the

employee at normal payroll intervals for the remainder of the original Separation Allowance

period.  *Id*.

In addition to salary maintenance, the Gardner Plan also provides continuance of medical

and dental plan coverage, life insurance benefit coverage, healthcare reimbursement, and the

employee assistance program.  (Plan, § IVC).  The Plan provides that periods during which

Separation Allowance Benefits are provided will be recognized towards vesting service under

any applicable employee savings plan benefit offered by the company and towards the age and

service requirements of the retiree medical plan.  (Plan, § IVC).

Under the Gardner Plan, Gardner Denver, Inc. "or any of its predecessors, successors,

officials, agents and employees" is defined as "the Company."  (Plan, § III).  The Company is the

Plan Sponsor and the Plan Administrator.  (Plan, § II).  The Corporate Human Resources

_____

Material Facts).  However, there is no indication that the instant facts materially differ from the
Plan terms.

Department is tasked with establishing administrative procedures and ensuring that they are consistently and uniformly applied.  *Id*.  The Corporate Human Resources Department also has "final discretionary authority to interpret the Plan and to decide any disputed claims under the Plan."  *Id*.  If benefits do not automatically commence under the Plan, then an aggrieved employee may file a written claim for benefits with the Corporate Human Resources department. (Plan, § V).

The above-cited provisions of the Gardner Plan are analogous to characteristics shared by other severance plans that the Fifth Circuit has held to be governed by ERISA.  For example in *Suda v. BP Corp. North America, Inc.*, despite a "seemingly simple formula" for determining the severance allowance for terminated employees, the court held that the subject plan entailed an "ongoing administrative scheme" where:  the allowance was subject to various deductions; there were non-trivial criteria for eligibility; the plan administrator retained discretion to interpret the plan; there was a two-level administrative claims procedure; and the plan provided ongoing health and life insurance, relocation, and educational aid.  *Suda v. BP Corp. North America, Inc.*, 2006 WL 1049224 (5th Cir. Apr. 19, 2006) (unpubl.).

In *Wilson v. Kimberly-Clark Corp.*, the Fifth Circuit determined that although the Kimberly-Clark Corporation Severance Pay Plan awarded a simple lump-sum payment to eligible plan participants, it nonetheless constituted an ERISA plan where the plan:  contained specific eligibility criteria that disqualified some potential plan participants; provided increasingly detailed formulas for calculating plan benefits; specified how the payment was to be disbursed; required its committee to establish a procedure for handling claims; and authorized amendments. *Wilson v. Kimberly-Clark Corp., supra*.

11

In this case, although the calculation of the severance allowance under the Gardner Plan is initially uncomplicated, it requires ongoing monitoring and modification due to a participant's eligibility for payments from other sources.  Moreover, the Corporate Human Resources Department retains discretionary authority to interpret the Plan and to decide disputed claims under the Plan.  Like *Suda, supra*, the Plan includes various criteria for eligibility and provides additional ongoing benefits.  In sum, the Gardner Plan requires an "ongoing administrative scheme," and therefore is an "employee benefit plan" under ERISA.  *See Suda, supra; see also Whittemore v. Schlumberger Technology Corp.*, 976 F.2d 922, 924 (5th Cir. 1992) (self-executing plan that "required some sort of an administrative set-up" sufficed for ERISA purposes).

    2)  <u>Does the Plan Fall within DOL's Safe Harbor Provision</u>?

The Department of Labor's "safe harbor" provision precludes a plan from ERISA consideration if "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; *and* (4) the employer receives no profit from the plan.  29 C.F.R. § 2510.3-1(j)).  The plan must meet all four criteria to be exempt from ERISA."  *House, supra* (emphasis added).  Here, plaintiff does not contend that the Gardner Plan falls within the safe harbor provision.  *See Wilson*, 254 Fed. Appx. at 284.  Moreover, the instant plan does not fall within the "safe harbor" provision because, at a minimum, Gardner is responsible for paying the benefits.  (Plan, § I).

    3)  <u>Established by Employer Engaged in Interstate Commerce</u>

The plan also must have been established by an employer or employee organization for the purpose of providing benefits for employees.  *Hansen*, 940 F.2d at 977-978.  The focus of this inquiry is the employer's involvement with the plan administration.  *Id*.  Some meaningful

degree of participation by the employer in the creation or administration of the plan is required

with an intent to provide health, accident, or other benefits to employees.  *Id*.  Here, the terms of

the Gardner Plan clearly state that the purpose of the plan is to "provide short-term financial

assistance to salaried employees who are permanently and involuntarily terminated through no

fault of their own."  (Plan, § I).  This language suffices for ERISA.  *See Wilson, supra*.

     In his opposition to defendants' motion for summary judgment, plaintiff argues that for

the plan to be subject to ERISA it must be "established or maintained by an employer or

employee organization *engaged in interstate commerce*."  (Pl. Opp. Memo., pgs. 2-3 (citing

*Meredith v. Time Ins. Co.*, 980 F.2d 352 (5th Cir. 1993)) (emphasis added).  While this argument

is rarely raised by parties,[6] it is substantially undermined by plaintiff's own allegation that

Gardner is a "foreign business corporation" doing business in Louisiana.  *See* Petition and

*verification*.  Moreover, Gardner adduced uncontroverted evidence that it engages in commercial

activity across state borders.  (Decl. of Marec Edgar, Def. Suppl. Memo. Exh. [doc. # 16]).[7]

Accordingly, Gardner is engaged in interstate commerce.  Removing defendants have established

that the Plan is an "employee benefit plan" under ERISA.

     **b)**     **Scope of § 502(a)'s Civil Enforcement provision**

     Having determined that the Gardner Plan is an ERISA plan, the court must next

---

     [6] *See generally Meredith, supra* (court did not raise interstate commerce issue sua sponte where the parties themselves did not question the matter).

     [7] Edgar is Gardner's Assistant General Counsel and Risk Manager.  *Id*.
Plaintiff contends that the court should not consider Edgar's declaration because defendants did not submit the evidence initially in conjunction with their motion for summary judgment.  (Pl. Opp. to Leave to File [doc. # 14]).  However, plaintiff could have cured any alleged prejudice by seeking leave of court to submit his own evidence that Gardner is purely a local concern that does not engage in interstate commerce.  Plaintiff did not seek to do so.

determine whether plaintiff's causes of action fall within the scope of § 502(a)'s civil enforcement provisions.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488 (2004).[8] The Supreme Court has framed the inquiry as follows, ". . . if an individual, at some point in time, could have brought his claim under ERISA §§ 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA §§ 502(a)(1)(B)."  *Davila*, 542 U.S. at 209, 124 S.Ct. at 2496.  A state law claim is not independent of ERISA if interpretation of the plan terms comprises an essential part of the claim and liability exists only because of the administration of the ERISA plan.  *Davila*, 542 U.S. at 213, 124 S.Ct. at 2498.  In making this assessment, the court must examine the plaintiff's petition, the statute upon which his claims are based, and the various plan documents.  *Davila, supra.*

Buelow's petition sets forth claims for breach of contract and for unpaid wages due to Gardner's alleged failure to pay him Separation Allowance Benefits as provided for under the terms of the Gardner Plan.  (Petition).  Plaintiff, however, cannot prosecute his claims without a favorable interpretation and application of an ERISA plan.[9]  Moreover, neither side disputes that plaintiff is a "participant" under the Plan.[10]  Accordingly, plaintiff could have brought his claim

---

[8]  Section 502(a)(1)(B) provides that
[a] civil action may be brought-(1) by a participant or beneficiary-... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. § 1132(a)(1)(B).

[9]  In fact, plaintiff attached a copy of the Gardner Plan to his petition.

[10]  A participant is defined as ". . . any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to

14

under ERISA §§ 502(a)(1)(B) and he does not allege the violation of a legal duty that exists

independent of ERISA.  Therefore, plaintiff's state law claims are completely preempted by

ERISA; removal was proper; and the court may exercise subject matter jurisdiction, via federal

question, 28 U.S.C. § 1331.  *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir.

2003) (en banc).

## II.      Non-Jurisdictional Issues

### a)      Ordinary Preemption

Having determined that plaintiff's state law claims are completely preempted by ERISA's

§ 502, it is not clear whether it is necessary to further consider whether plaintiff's state law

claims are subject to ordinary or conflict preemption under ERISA § 514.  *See Prudential Ins.*

*Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 907-914 (8th Cir. 2005)

(citing *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 275 n. 34 (5th Cir. 2004)

(ordinary preemption provides an affirmative defense against claims *not* preempted by ERISA §

502); *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959 (7th Cir. 2000) (finding claims

completely preempted, but not conflict preempted).  Nonetheless, the court need not resolve this

question because it is manifest that plaintiff's state law claims are also preempted by § 514.

ERISA's § 514(a) preempts "any and all State laws insofar as they may now or hereafter

relate to any employee benefit plan."  *Mayeaux v. Louisiana Health Service and Indem. Co.*, 376

F.3d 420, 432 (5th Cir. 2004) (citing 29 U.S.C. § 1144(a)).  The Supreme Court has interpreted

this language to be "deliberately expansive," and is formulated to make employee benefit plans

---

receive a benefit of any type from an employee benefit plan which covers employees of such
employer or members of such organization, or whose beneficiaries may be eligible to receive any
such benefit."  29 U.S.C. § 1002(7).

an exclusively federal concern.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549,

1552 (1987).  The term "relate to" is to be given its "broadest common sense meaning:  a law

"relates to" a plan when it has a connection with or a reference to said plan.  *Shaw v. Delta*

*Airlines Co., Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898 (1983).

      ERISA preempts a state law claim if  "(1) [t]he state law claim addresses an area of

exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan;

and (2) the claim directly affects the relationships among traditional ERISA entities--the

employer, the plan and its fiduciaries, and the participants and beneficiaries."  *Mayeux, supra*

(citation omitted).  Plaintiff's state law claims meet this two part test, and thus are preempted.

*See* discussion *supra*; *see also Jordan v. Central Louisiana Telephone Co.*, 525 So.2d 1079

(La. App. 3d Cir. 1988) (La. R.S. 23:631 *et seq.* is preempted by ERISA); *Falgout v. McDermott,*

*Incorporated*, 1993 WL 386253 (E.D. La. Sept. 1993).

      **b)      Standard of Review**

      Under ERISA, factual determinations made by the plan administrator are reviewed for

abuse of discretion.  *Southern Farm Bureau Life Ins. Co. v. Moore*,  993 F.2d 98, 100-101 (5th

Cir. 1993) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991)).  However, a

plan administrator's interpretation or application of the plan is reviewed de novo "'unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan.'"  *Aboul-Fetouh v. Employee Benefits*

*Committee*,  245 F.3d 465, 471-472 (5th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956-57 (1989)).  If the plan grants authority to the

administrator to make a final and conclusive determination of the claim, then the plan

administrator's decision is reviewed under an abuse of discretion or "arbitrary and capricious" standard. *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir. 1994). No "magic phrase" or incantation is required to confer the plan administrator with discretionary authority. *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1337 (5th Cir. 1994) (the exercise of "sound judgment" is sufficient to confer discretionary authority).

Here, the Gardner Plan accorded the Gardner Corporate Human Resources Department "final discretionary authority to interpret the Plan and to decide any disputed claims under the Plan. The findings and conclusions of the Corporate Human Resources department shall be final and binding on the Company and the employee." (Plan, § II). Accordingly, this court will apply an abuse of discretion standard of review. *Holland v. International Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009).

### III.   Conclusion

For the reasons set forth above, the undersigned finds that there is no genuine issue as to any material fact and that defendants, Gardner Denver, Inc. and Gardner Denver Thomas, Inc., are entitled to judgment as a matter of law, declaring that the Gardner Plan is an "employee welfare benefit plan" governed by ERISA, that plaintiff's claims are completely and conflict preempted by ERISA, and that the decision of the Plan Administrator is subject to review for abuse of discretion. Fed.R.Civ.P. 56.[11]  Accordingly,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 8] filed by defendants, Gardner Denver, Inc. and Gardner Denver Thomas, Inc., be GRANTED, and that

---

[11]  In his opposition to defendants' motion for summary judgment, plaintiff requested an opportunity to amend his petition to assert a claim under ERISA should the court determine that his state law claims are preempted. Plaintiff may certainly seek leave to do so.

judgment be entered in favor of said defendants, declaring that the Gardner Plan is an "employee welfare benefit plan" governed by ERISA, that plaintiffs' claims are completely and conflict preempted by ERISA, and that the decision of the Plan Administrator is subject to review for abuse of discretion.  Fed.R.Civ.P. 56.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of November, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE